# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEXTRON FINANCIAL CORPORATION, | : | 09-cv-01714 |
| | : | |
| Plaintiff, | : | |
| | : | |
| TURBINE AIRFOIL DESIGNS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | Hon. John E. Jones III |

FILED
HARRISBURG, PA
JUN 0 4 2010
MARY E. D'ANDREA, CLERK
per _____

## MEMORANDUM AND ORDER

**June 4, 2010**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Before the Court in this breach of contract action is Plaintiff Textron Financial Corporation's ("Plaintiff" or "Textron") Motion to Dismiss Defendant Turbine Airfoil Designs, Inc., Chasco Capital Corporation, The Walton Johnson Group, Inc., and John A. Walton's (collectively, "Defendants" or "TAD") Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the Motion"). (Doc. 77). Plaintiff filed the Motion on February 8, 2010 and a brief in support thereof on February 22, 2010. (Doc. 78). Defendants filed a brief in opposition to the Motion on March 8, 2010. (Doc. 79). On March 22, 2010, Plaintiff filed a reply (Doc. 80) and, accordingly, this matter is ripe for disposition.

1

I. **PROCEDURAL HISTORY**

Plaintiff commenced this action with the filing of a seven count Complaint against the Defendants involving TAD's default on several forbearance agreements, alleging the following claims: (1) Breach of Loan Documents (against Turbine); (2) Breach of the Walton Guaranty (against John Walton); (3) Breach of the Chasco Guaranty (against Chasco); (4) Breach of the Walton Johnson Group Guaranty (against the Walton Johnson Group); (5) Appointment of a Receiver (against Turbine); (6) Specific Performance (against Turbine); and (7) Attorneys' Fees (against all Defendants).[1] (Doc. 1).

On October 16, 2009, Defendants filed their Answer and Counterclaims, alleging one counterclaim for "Breach of Contract/Implied Covenant of Good Faith and Fair Dealing/Breach of UCC" and one counterclaim for attorneys' fees. (Doc. 43). Textron filed a Motion to Dismiss Defendants' Counterclaims, and TAD, with Textron's consent, filed an Amended Answer and Counterclaims on January 25, 2010. (Doc. 76). Defendants continued to pursue their Breach of Contract and Implied Covenant of Good Faith and Fair Dealing and Breach of

---

[1]Plaintiff concurrently filed an Emergency Motion to Appoint a Receiver. (Doc. 3). Plaintiff instead elected to conduct an auction of the collateral at issue in this matter, and notified the Court on December 30, 2009 that the auction was complete and the collateral was sold. (Doc. 66). The completion of the auction resolved Counts Five and Six of Plaintiff's Complaint.

UCC claim.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the [non-moving party], and determine whether, under any reasonable reading of the complaint, the [counterclaim plaintiff] may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

3

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that [counterclaim defendant's] liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a [counterclaim] defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*

4

Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. BACKGROUND

According to the standard of review, all of the following non-conclusory facts and inferences drawn therefrom are viewed in the light most favorable to the Defendants as the non-moving party. Essentially, TAD asserts that Textron failed to act in a commercially reasonable manner with respect to the sale of the collateral. Specifically, Defendants assert that as a secured creditor, Textron owed to TAD a duty of good faith and fair dealing. Defendants maintain that this duty mandated that Textron dispose of the collateral securing TAD's indebtedness in a commercially reasonable manner. Defendants allege that Textron failed to act in a commercially reasonable manner by conducting the forced liquidation over a period of eight (8) weeks instead of at least twelve (12) weeks. Because of the

5

timeframe of the sale, Defendants claim that the total proceeds were considerably less than "would have been received if the sale had been conducted in a commercially reasonable manner." (Doc. 76 ¶ 102). Therefore, according to Defendants, Plaintiff breached the Fourth Forbearance Agreement, (the last controlling loan document), duties of good faith and fair dealing, fiduciary duties with respect to disposition of the collateral, and "applicable law." Defendants also assert that Plaintiff is, therefore, precluded from asserting breach of contract or other claims against Defendants.

In support of the Motion to Dismiss, Plaintiff alleges that Defendants fail to plead non-conclusory facts, fail to sufficiently plead specific relief to satisfy the Rule 8 pleading standard, and fail to plead a surplus as required by Pennsylvania statute. (*See* Doc. 78). Specifically, Textron maintains that TAD's first theory of liability, that Textron breached the Fourth Forbearance agreement, must fail because Defendants conflate the terms of that agreement. Plaintiff notes that the Agreement nowhere states that a liquidation sale must be completed within a particular timeframe. Plaintiff claims that Defendants inappropriately cite to a report by Great American Group that opined that a "forced liquidation would take twelve weeks" because that report was prepared for the benefit of Defendants, not the Plaintiff, and Defendants have nowhere filed it on the record. Therefore,

because none of the relevant documents makes any reference to the Great American report or a particular time frame for the process, Plaintiff asserts that Defendants' claim for breach of the Fourth Forbearance Agreement must fail. Further, Textron asserts that Defendants' claim set forth in paragraph 122 of the Amended Answer "offers nothing more than catchall allegations and the conclusion that '[Plaintiff] breached [certain duties and laws].'" (Doc. 78 p. 6). Textron notes that Defendants fail to cite to any applicable fiduciary duty or to any law with respect to the duty of good faith and fair dealing, and fail to specify how Textron breached any duty. Indeed, Plaintiff counters that "[t]he duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract." (*Id.* at 7 (citing *Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151, 154 (Pa. Super. 1995))). Relevant to the alleged breach of the duty of good faith and fair dealing, Textron further claims that Defendants cannot assert any such claim because they "agreed to the acts they now complain[] about." (*Id.* at 6 (citing *Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151 (Pa. Super. 1995))). Finally, Plaintiff claims that "Defendants' Counterclaims must also fail because they cannot as a matter of law recover damages for failure to sell in a commercially reasonable manner without

7

demonstrating a surplus." (Doc. 76 p. 9 (citing 13 PA. CONS. STAT. ANN. § 9625(d))).

## III. DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. When exercising federal diversity jurisdiction, a federal court must apply the choice of law rules of the forum state. *Kruzits v. Okuma Machine Tool, Inc., et. al*, 40 F.3d 52, 55 (*citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). Therefore, Pennsylvania choice of law rules apply in this action. The applicable loan documents state that Oregon law applies to the transactions. Nonetheless, the parties address the Motion under Pennsylvania law and note that "[t]here is no material difference [between Pennsylvania and Oregon law] with respect to the present questions" (Doc. 79 p. 6 n.2) so we will analyze the Motion under Pennsylvania law.

Section 9610 of the Pennsylvania Commercial Code notes that "[a]fter default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation of processing " and that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially

reasonable." 13 PA. CONS. STAT. ANN. § 9610(a)-(b). The Third Circuit has asserted that the test for commercial reasonableness "should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization." *Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 200 (3d Cir. 2000) (applying Pennsylvania law). It is the burden of the creditor to demonstrate the sale's commercial reasonableness under the "totality of the circumstances." *Savoy v. Beneficial Consumer Discount*, 468 A. 2d 465, 467 (Pa. 1983).

We find that Defendants have sufficiently stated a claim for purposes of Rule 12(b)(6). We note that our task at this juncture is not to decide the matter on its merits or even evaluate the probability of Defendants' success on the merits, but rather, taking the well-pleaded allegations as true, whether Defendants have stated a plausible claim for relief. *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949, 1950 (2009).

First, we note that it is not Defendants' burden to prove that the sale was "commercially unreasonable" but rather it is Plaintiff's burden to demonstrate that the sale was, in fact, commercially reasonable. *See Savoy v. Beneficial Consumer Discount*, 468 A.2d 465, 467 (Pa. 1983). As required by Pennsylvania statute, *every* aspect of a sale must be commercially reasonable. 13 PA. CONS. STAT.

9

ANN. § 9610(a)-(b). Although not addressing Defendants' likelihood of success on the merits, at this point in the action we find that Defendants have sufficiently alleged facts that demonstrate that the sale was commercially unreasonable: namely those facts relating to the time and manner of conducting the liquidation of the collateral. Further, we find that Defendants' have sufficiently alleged a dispute as to whether Textron acted in good faith in the manner in which it conducted the sale, while still recognizing that "[t]he duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given" (namely, to conduct the auction of the collateral). *Creeger Brick and Building Supply Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151, 154 (Pa. Super. 1995).

We also find Plaintiff's argument that Defendants "agreed to the acts they now complain[] about" unavailing at this stage. (Doc. 78 p. 6). Granted, in the Fourth Forbearance agreement, Defendants agreed to Textron's election of potential remedies and waived and released all claims regarding the enforcement of Textron's rights. (*See* Fourth Forbearance Agreement, Doc. 1-16 ¶ 9). Nonetheless, we are unconvinced that this agreement either enabled Plaintiff to act in a "commercially unreasonable" manner in conducting the sale in contravention of Pennsylvania law or precludes Defendants from asserting such a claim.

Further, we note that through the inception of this action, Defendants have consistently recognized that Textron could elect its remedy regarding the disposition of the collateral but have also consistently reserved the right to dispute the reasonableness of the transaction.

Finally, we disagree with Plaintiff's argument that Defendants have failed to plead a surplus and therefore cannot assert a claim for damages pursuant to 13 PA. CONS. STAT. ANN. § 9625(d). We find that Defendants' allegations, (that the balance due by Defendants was $637,235.78, the gross proceeds from the sale were $750,000, the net proceeds were $500,000, and a "properly conducted sale" was expected to yield $1.139 million), are sufficient to survive a motion to dismiss.[2]

"Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Omicron Sys. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004) (quoting *J.F. Walker Co., Inc. V. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa Super. 2002). Although we find that Defendants have stated a claim with respect to the UCC as it applies

---

[2]We note, however, that these allegations without further evidentiary and legal support will likely be insufficient to survive a motion for summary judgment.

11

in Pennsylvania, we nonetheless find that Defendants have not stated a claim that Plaintiff breached the Fourth Forbearance Agreement. As Plaintiff notes, Defendants do not "rely on the terms of the contract" to state their breach of contract claim, but "instead try to cobble together a claim" using the Great American report. (*See* Doc. 78 p. 4). Indeed, the only pleadings found in the First Amended Answer and Counterclaims regarding a breach of contract claim are the conclusory assertions that "Textron breached the Fourth Forbearance Agreement by not selling the collateral in at least the time and other terms of a 'forced liquidation' sale." (Doc. 76 ¶ 121). Much like the "Counterclaims" portion of Defendants' Amended Answer and Counterclaims, the "Background Facts" section is also bereft of any non-conclusory factual allegations or assertions with respect to a breach of contract claim. We are not to accept factual allegations that constitute nothing more than "legal conclusions" or "naked assertions," *Twombly*, 550 U.S. at 555, 557, because such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Because Defendants offer nothing more with respect to an alleged breach of contract by Plaintiff, we shall dismiss that claim.

## IV. CONCLUSION

For the reasons articulated above, we find that Defendants have sufficiently

asserted counterclaims regarding whether the auction was "commercially reasonable" as required by Pennsylvania statute, and thus the Motion to Dismiss Defendants' Counterclaims will be denied on those grounds. Nonetheless, we also find that Defendants have failed to state a breach of contract claim for which relief could be granted, and will accordingly dismiss that claim.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Dismiss Defendants' Counterclaims (Doc. 77) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

    a. Defendants' breach of contract counterclaims are **DISMISSED**.

    /s/ John E. Jones III
    John E. Jones III
    United States District Judge